IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

JAMES ADAM WRIGHT, JR.                                                    PLAINTIFF

v.                              Civil No. 1:23-CV-01092-CDC

SERGEANT ANITA COGBILL;
JAIL ADMINISTRATOR GEAN SIEGER;
SHERIFF LEROY MARTIN; and
DEPUTY SHERIFF JERRY MANESS                              DEFENDANTS

**MEMORANDUM OPINION**

        This is a civil rights action filed *pro* se by Plaintiff, James Adam Wright, Jr., under 42

U.S.C. § 1983.  On November 28, 2023, the parties consented to have the undersigned conduct all

proceedings in this case including a jury or nonjury trial and to order the entry of a final judgment

in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  (ECF No. 18).  Before the Court is

Defendants' Motion for Summary Judgment.  (ECF No. 59).  Plaintiff responded (ECF No. 80),

and Defendants filed a Reply.  (ECF No. 84).

**I.  BACKROUND**

        All the events complained of by Plaintiff in his Complaint took place while he was

incarcerated in the Columbia County Detention Center ("CCDC") in Magnolia, Arkansas.  In his

Complaint, Plaintiff names four Defendants: (1)Sargent "Cogbill;" (2) Gean Sieger, Jail

Administrator; (3) Sheriff Leroy Martin; and (4) "Jerry Manor," "Deputy Sheriff."  (ECF No. 2,

pp. 2-3).  Plaintiff also named as Defendants "all Columbia County Jail Officials" and the

"Columbia County Jail."  (ECF No. 2, p.1).  In the Service Order herein, the Court directed the

case heading in this matter be amended to terminate the Columbia County Jail as a jail building is

not a proper Defendant, and for "all Columbia County Jail Officials" to be replaced with John or

Jane Doe Defendant. (ECF No. 7). In their Answer, the Columbia County Defendants identified the proper spelling of Defendants Anita Cogbill to be Anita Cogvill and Jerry Manor to be Jerry Maness, and the case heading was changed to reflect this. (ECF No. 12). However, in her Affidavit in support of the Defendants' Motion for Summary Judgment Defendant Cogvill identified herself as "Anita Cogbill." (ECF No. 59-2, p. 2). Accordingly, the Court has again changed the case heading in this matter and will use Defendant Cogbill herein. (ECF No. 86).

Plaintiff alleges two claims against these five Defendants in his Complaint. First, Plaintiff alleges that Defendants Cogbill, Maness, Martin, and Sieger violated his constitutional rights on August 26, 2023 when they allowed a breach of security in the CCDC. Further, Plaintiff claims the conditions of confinement in the CCDC on August 26, 2023 violated his constitutional rights. Lastly, Plaintiff claims these Defendants violated his constitutional rights on August 26, 2023 through their neglect. The Court finds Plaintiff's own words helpful in interpreting his allegations:

> On 8/26/23 I, along with my POD 2 . . . were coming back from yard call when POD 5, which is a segregated POD, all came out [of] their cells then out of the front Pod door and began to attack us with knives and metal bars. I was the [first] to be assaulted. [An] inmate hit me in [the] back of my head with [an] unknown metal object while another one assaulted me with hands and other things causing my head to be severely busted. I began to later get dizzy and ultimately had to go to the hospital and received X-rays, CT scans, and staples in my head. Pod 5 is only supposed to have [one] inmate out at a time, but all officials have been aware of their capability to come out [of] their cells for months and the door because on 8/25/23 inmate came out and ran the hallway without any thing being done ….

(ECF No. 2, pp. 4-5) (cleaned up). Plaintiff alleges this Claim One against all Defendants in both their individual and official capacities. For his official capacity claim, Plaintiff states:

> All officers including the ones named specifically have been aware of [the] breach of security in [the CCDC] and each refused to do anything about it which is neglect, a common occurrence.

(ECF No. 2, p. 5) (cleaned up).

In Claim Two, Plaintiff claims that on August 14, 2023, Defendants Sieger, Martin, and Maness breached the security of the CCDC and neglected Plaintiff by allowing another inmate to throw urine on him.  According to Plaintiff:

> On 8/14/23 an inmate came out [of] his cell in POD 5 and threw urine in [Plaintiff's] face . . . This inmate was supposed to be locked down and the front trap door secure yet [he] was able to assault me due to neglect because all Jail Administration are aware of this breach of security but neglect to do anything to fix it nor did they 'after' the incident.

(ECF No. 2, p. 6) (cleaned up).  For his official capacity portion of Claim Two Plaintiff states:

> All these officers were aware of the Breach of Security in POD 5 but neglected to do anything to fix it before or after the incident.

(ECF No. 2, p. 7) (errors in original).

Plaintiff states his injuries from the August 26, 2023 attack, in addition to the immediate head wound, have been migraines and nose bleeds.  (ECF No. 2, p. 9).  Plaintiff does not allege any injuries from the urine incident on August 14, 2023.  *Id.*  Plaintiff requests compensatory and punitive damages and sanctions against all Defendants.  *Id.*

At all times relevant to the instant lawsuit, Defendants Cogbill and Sieger were employees at the CCDC and Defendants Martin and Maness were employees of the County as Sheriff and Deputy Sheriff respectively.  (ECF No. 2).  Plaintiff indicates in his Complaint that he was convicted in 2008.  (ECF No. 2, p. 2).  However, he also states he was a pretrial detainee at the time of the incidents in August 2023.  *Id.*  According to the Arkansas Division of Correction's website, Plaintiff was sentenced on his most recent conviction March 27, 2024.[1]  Additionally, in their briefing, Defendants characterize Plaintiff as a pretrial detainee at the time in interest.  (ECF No. 60, p. 2).  Therefore, the Courts finds Plaintiff's status as a pretrial detainee is undisputed.

---

[1] *See Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (court may take judicial notice of judicial opinions and public records)

The relevant facts in this matter are largely undisputed by the parties; the only material facts in dispute are whether each Defendant knew of a substantial risk to Plaintiff's safety. The parties agree both incidents occurred as alleged by Plaintiff, and Defendants do not dispute the unreliability of the locks of the Pod 5 cell doors. Defendants dispute, however, their knowledge of any safety risk to Plaintiff prior to either incident. (ECF Nos. 60, 84).

First, the Court finds it helpful to cite Defendants' distinction of the Pod 5 cell doors and the Pod 5 pod door. The Pod 5 cell doors open into Pod 5 while the Pod 5 pod door opens into the main hallway of the CCDC. (ECF No. 84, p. 2). There is nothing on the record to contradict this explanation. Additionally, Defendants provide context in their description of incident on August 26, 2023, but again, it is noted that Defendants do not dispute the facts alleged in Plaintiff's Complaint, only Defendants' knowledge of any risk to Plaintiff.

Defendants explain, that on August 26, 2023, nonparty Officer Guise was in Pod 2 supervising as inmate Cooksey cleaned the pod. Once Cooksey finished cleaning Pod 2, Officer Guise called for Officer Owen to return the Pod 2 group into the pod. As the Pod 2 group – which included Plaintiff – entered the building, three Pod 5 inmates (inmates Witcher, Radford, and A. Johnson) opened their cell doors and the Pod 5 door and rushed out of the pod into the hallway. The Pod 5 inmates and Pod 2 inmates began to fight which the Defendants describe:

> Johnson and Wright began fighting. Witcher and Ward were struggling with Officer Owen so Guise assisted Officer Owen in getting back to his feet. Radford was hitting inmates with an object in a sock. Wright was charging inmate Jonson with a broom. Officer Owen pulled out his JPX gun to stop the altercation and it worked. All inmates were placed back into the pods.

> Wright was injured, as he had been hit by Radford in the head and was bleeding. He was taken to the Emergency Room and treated with four staples in his head.

(ECF No. 61). The Plaintiff does not dispute any of these facts as presented by Defendants. (ECF Nos. 80-82).

4

Additionally, Defendants do not dispute that Plaintiff had urine thrown on him by a Pod 5 inmate on August 14, 2023.  This occurred through the trap door of the Pod 5 door as Plaintiff walked down the hallway.  (ECF Nos. 60, p. 5; 80, p. 3; 84, p. 2).  Defendants contend they were not aware of the urine incident until after the August 26, 2023, fight.[2]  (ECF No. 61, p. 1).

Two additional incidents regarding Plaintiff and Pod 5 are evidenced by Inmate Incident Reports on the record.  First, in the CCDC Inmate Incident Report dated August 15, 2023, nonparty Officer Davis describes an incident where Plaintiff, while walking down the hallway, leaned into the trap door of Pod 5, and exchanged words with and spat at Mr. Witcher (one of his later attackers).  (ECF No. 80, p. 13).  After this exchange, Plaintiff shouted down the hall that Pod 8 was going to receive something from Mr. Witcher, and Officer Davis was told later in the day by Mr. Witcher and Mr. Radford (another of Plaintiff's attackers) that Mr. Wright called their families and threatened harm to both Witcher and Radford.  *Id.*  Next, in a CCDC Inmate Incident Report dated March 20, 2023, nonparty officer Trent Ainsworth describes an incident where he attempted to move Plaintiff from Pod 4 to Pod 5, but Plaintiff refused to enter Pod 5.  Officer Ainsworth noted Plaintiff told him if he went into Pod 5 he would "kill someone in the pod or kill himself." (ECF No. 64, p. 8).  Officer Ainsworth informed Defendant Cogbill and Defendant Sieger of Plaintiff's statements, and Plaintiff was placed in a suicide suit and observed, but the incident report is unclear whether Plaintiff was placed in Pod 5 on that day.  *Id.*  The parties do not dispute this interaction took place.  (ECF Nos. 60-61, 80-82).

---

[2] Plaintiff argues Defendants failure to produce video of the urine incident is noteworthy.  The Court disagrees.  Defendants do not dispute the incident occurred as Plaintiff claims.  Accordingly, there is no factual dispute video footage could resolve.

Examining each of the Defendants submitted affidavits, [3] the Court considers Defendant Cogbill's Affidavit:

> I was not aware prior to this incident that the pod 5 inmates were able to open their pod door and breach into the main hall, which of course was also a safety risk to me and my fellow officers. In this instance, the inmates had opened both their cell doors and the pod door. All had been locked, but the inmates had found a way to open them. I investigated after this incident, and it is not clear how they managed to open them. I suspect that they had stuffed something in the locks to prevent them from locking. Subsequently, we changed the locks and regularly check the locks to prevent this from occurring. It had not occurred before and did not occur after, to our knowledge.

(ECF No. 59-2, p. 4). Defendant Cogbill goes on to testify she was unaware of the urine incident, and she was not aware of any substantial risk of a threat to Plaintiff prior to August 26, 2023. *Id*. Defendant Cogbill also states Defendants Maness, Sieger, and Martin did not have any personal role in the incidents. (ECF Nos. 59-2, p. 5).

Defendant Maness testified as follows in his affidavit:

> On August 26, 2023, before this event, I was not aware that the Pod 5 inmates could open the pod door and enter the hallway. This creates a security risk for the inmates and the officers and I would not have ignored a pod door being able to open.

(ECF No. 59-3, p. 3). Defendant Maness also testified it was determined after the fact that inmates manipulated the locks by stuffing items into them so the doors would not close properly. Finally, Defendant Maness testified he had no knowledge of the urine incident prior to August 26, 2023.

---

[3] Defendants also included the affidavit of a non-party, Officer Guise, on the summary judgment record. Officer Guise testified he was aware the Pod 5 inmates could breach their pod door, but he was unaware they could access the hallway: "I was aware prior to this incident that the Pod 5 inmates were able to open their pod door, but I was not aware that they were able to breach into the main hall, which of course was a safety risk to me and my fellow officers. (ECF No. 59-1, p. 4). Officer Guise goes on to testify he was not aware of the urine throwing incident or any "substantial risk of a threat to [Plaintiff] prior to the August 26, 2023 incident. *Id*. Officer Guise did not testify he informed any Defendant of the Pod 5 inmates' ability to breach the pod door. As discussed below, to establish a failure to protect claim, Plaintiff must show the Defendants knew of and disregarded a substantial risk to his health or safety. Accordingly, Officer's Guise knowledge, if not shared with the Defendants, is irrelevant here.

*Id.* Defendant Martin's Affidavit concerning his knowledge was exactly as Defendant Maness'

testimony – Martin had no knowledge of any ability to breach the Pod 5 door prior to the August

26, 2023, incident. (ECF No. 59-4, p. 3).

> Defendant Sieger testified in her Affidavit:

> At the time of the event, [Plaintiff] made an allegation that [Cogbill] opened the jail door so that the inmates could escape. There was, and is, no credible evidence of that allegation. Cogbill has denied this and denied it at the time. Instead, it appeared that the inmates had manipulated the locks by stuffing items in them so that they would not close properly. Locks were changed after this incident.

(ECF No. 59-5, pp. 3-5). Defendant Sieger also testified she searched the records of the CCDC

and could not locate any record of an August 2023 incident involving Plaintiff and urine. *Id.* at 3.

Notably, Defendant Sieger's Affidavit is devoid of any statement regarding her knowledge of the

Pod 5 cell or pod door locks and the Pod 5 inmates' ability to exit the pod into the main hallway.

(ECF No. 59-5). She does not deny knowledge of the urine incident but instead testifies there is

no record of it. *Id.*

While Plaintiff argues otherwise in his pleadings, the only factual disputes arising from

affidavit are in Plaintiff's conflicting Affidavits where he states the "officers" have been aware of

the Pod 5 breach of security causing his attack for months but have refused to do anything about

it, (ECF No. 80, p. 14) as compared with the second Affidavit where Plaintiff states the "officers"

refused to do anything about his assault with the urine. Plaintiff says the trap doors are supposed

to be closed and inmates are not supposed to be out of their cells, asserting Defendants failed to

protect him. (ECF No. 80, p. 15).

Additionally, Plaintiff disputes Defendants Maness and Martin's claims of ignorance about

the Pod 5 issues because, according to Plaintiff, they both stated in responses to Interrogatories

that they knew inmates could break out of Pod 5.  (ECF No. 81, p. 4).  Plaintiff attaches Defendant Maness and Defendant Martin's interrogatory responses to his Response.

In an Interrogatory to Defendant Maness, Plaintiff asked: "How long have you been aware of the security breach in Pod 5 where inmates were breaking out of their cell prior to 8/26/2023?"  Defendant Maness responded: "No more than three months."  Plaintiff then asked Defendant Maness: "What was done prior to 8/26/2023 to prevent inmates [from] breaking out of their cells?"  Defendant Maness responded: "Making staff aware that inmates were stuffing materials such as socks or t-shirts between the door and the door frame until we could get the road department in to look at the Pod door."  (ECF No. 80, p. 10).

Plaintiff directs the same two interrogatories to Defendant Martin who provided the exact same answers as Defendant Maness.  Plaintiff also asked Defendant Martin: "What was done 'after' the 8/26/2023 incident to fix the security problem in Pod 5?"  Defendant Martin responded: "The road department came to the jail and weld[ed] plates to the doors to prevent them from opening.  The staff was informed on the importance of keeping the trap doors shut."  (ECF No. 80, p. 12).

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine

issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607. "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. at 610. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Under § 1983, a defendant may be sued in either his personal capacity, or in his official capacity, or claims may be stated against a defendant in both his personal and his official capacities. The type of conduct that is actionable and the type of defense available depend on whether the claim is asserted against a defendant in his official or individual capacity. *See Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998) (internal citations omitted). "Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself." *Id.* Personal capacity claims "are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense" to these individual capacity claims. *Id.* To state a claim under 42 U.S.C. § 1983, Plaintiff must allege that the defendant acted under color of state law, and that the actor violated a right,

privilege, or immunity secured by the Constitution.  *West v. Atkins*, 487 U.S. 42, 48 (1988);

*Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999).

### III.  DISCUSSION

Defendants argue: (1) Plaintiff has failed to state a cognizable failure to protect claim in

either Claim One or Two because he has not shown Defendants were deliberately indifferent to a

substantial risk of harm to Plaintiff; (2) negligence is not sufficient for a Section 1983 Claim; (3)

Plaintiff failed to state a conditions of confinement violation; (4) there was no personal

involvement of any Defendants; (5) Defendants are all entitled to qualified immunity; and (6)

Plaintiff has failed to state an official capacity claim.  (ECF No. 60).[4]

### A.    Negligence

To state a Section 1983 claim, Plaintiff must allege that the Defendants while acting under

color of state law deprived him of a right, privilege, or immunity secured by the constitution or the

laws of the United States.  *Hott v. Hennepin Cty., Minn.*, 260 F.3d 901, 905 (8th Cir. 2001).

However, negligent conduct, or even grossly negligent conduct, does not state a claim under

Section 1983; the deprivation must be intentional.  *Daniels v. Williams*, 474 U.S. 327, 330 (1986);

*Davidson v. Cannon*, 474 U.S. 344 (1986).   Plaintiff makes several claims of negligence

throughout his Complaint.  (ECF No. 2).   To the extent Plaintiff contends Defendants were

negligent in failing to fix the Pod 5 doors, Plaintiff's negligence claims are wholly insufficient

and, Defendants entitled to summary judgment on any negligence theory of liability.

---

[4] Plaintiff agrees with the Defendants' interpretation of his "breach of security" claim as a failure to protect claim, (ECF No. 81, p. 6), however, he maintains he also asserts a conditions-of-confinement claim.  He argues Defendants were deliberately indifferent in the conditions of his confinement by allowing the dangerous circumstances of unlocked cell and pod doors.  (ECF No. 81, p. 10).

## B.      Qualified Immunity

Defendants assert qualified immunity as to each of Plaintiff's claims.  To determine whether the Defendants are entitled to qualified immunity, this Court, while considering the facts in the light most favorable to Plaintiff, conducts a two-part inquiry: "(1) whether the facts, viewed in the light most favorable to [Plaintiff], demonstrate the deprivation of a constitutional or statutory right; and (2) whether the right was clearly established at the time of the deprivation." *Ryno v. City of Waynesville*, 58 F.4th 995, 1004 (8th Cir. 2023).  "[Q]ualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021) (per curiam)).  "If [the court] conclude[s] that the alleged facts do not violate a constitutional right, then [the court] need not address the second inquiry, and the defendant[s] will be entitled to qualified immunity." *Id.*at 1005 (quoting *Groenewold v. Kelley*, 888 F.3d 365, 371 (8th Cir. 2018)).

The Court's analysis first turns to Plaintiff's Claim One against Defendants Cogbill, Martin, Maness, and Sieger for failure to protect him from the Pod 5 inmate attack on August 26, 2023m followed by Plaintiff's conditions of confinement claim within Claim One against these same Defendants because of the same attack.  The Court will then determine whether Defendants Sieger, Martin, and Maness are entitled to qualified immunity on Plaintiff's Claim Two for failure to protect him from the urine incident on August 14, 2023.

### 1.  Claim One - Failure to Protect

As Plaintiff was a pretrial detainee his claim must be analyzed under the Fourteenth Amendment which "guarantees pre-trial detainees at least as many protections as does the Eighth Amendment ... and extends to them as well protection from deprivations that are intended to punish." *Hott v. Hennepin Cty., MN*, 260 F.3d 901, 905 (8th Cir. 2001).  Prison officials have a

duty, under the Eighth Amendment, to protect prisoners from violence at the hands of other prisoners. *See Perkins v. Grimes*, 161 F.3d 1127, 1129 (8th Cir. 1998). However, not "every injury suffered by one prisoner at the hands of another ... translates into constitutional liability for prison officials responsible for the victims' safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

To prevail on his failure to protect claim, Plaintiff must satisfy a two-prong test: (1) show he was "incarcerated under conditions posing a substantial risk of serious harm;" and (2)n that the prison officials were "deliberately indifferent [to his] health or safety." *See Holden v. Hirner*, 663 F.3d 336, 341 (8th Cir. 2011) (internal citations omitted). The first prong is an objective requirement to ensure the deprivation is a violation of a constitutional right. *Id.* The second, however, is subjective requiring Plaintiff show the official "both knew of and disregarded 'an excessive risk to inmate health or safety.'" *Id. (quoting Farmers*, 511 U.S. at 837). "An official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it." *Young v. Selk*, 508 F.3d 868, 873 (8th Cir. 2007). Negligence alone is insufficient to meet the second prong, instead, the official must "recklessly disregard a known, excessive risk of serious harm to the inmate." *Davis v. Oregon County*, 607 F.3d 543, 549 (8th Cir. 2010) (internal quotation marks and citation omitted). Furthermore, "[c]laims under the Eighth Amendment require a compensable injury to be greater than *de minimis*." *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008) (explaining Section 1983 is analogous to a state law tort claim, thus general principals of tort law require that a plaintiff suffer some actual injury before he can receive compensation).

Defendants concede that "Pod 5 inmates being able to get out of the Pod 5 door into the main hallway is a safety risk to everyone at Columbia County Detention Center – the inmates, the public, and the officers, including each and every one of the defendants in this lawsuit." (ECF No.

60, p. 9).  Accordingly, the first objective prong of a failure to protect claim is met here – Plaintiff was incarcerated under conditions posing a substantial risk of serious harm when the Pod 5 inmates were able to breach the Pod 5 door into the main CCDC hallway.

Defendants contend, however, that there is no evidence illustrating that any of the Defendants knew of this condition and the substantial risk it posed to Plaintiff, much less deliberately disregarded such a risk.  Plaintiff argues he did state a claim for failure to protect because the Defendants knew of the dangerous situation with the cell and pod doors and did nothing to remedy it before Plaintiff was attacked.  (ECF No. 81, p. 5).  As this element is a subjective requirement, it is necessary to independently analyze each Defendant's knowledge.

### a.      Defendant Cogbill[5]

As enumerated above, Defendant Cogbill testified in her Affidavit that she had no knowledge of the Pod 5 inmates' ability to breach the Pod 5 pod door and enter the main hallway. She also testified that, to her knowledge, such a breach had never occurred prior to the August 26, 2023, attack on Plaintiff.  (ECF No. 59-2, p. 4).  While Plaintiff alleges that inmates previously breached the Pod 5 pod door, Plaintiff does not dispute Defendant Cogbill's testimony that she was unaware of any such breach.  (ECF No. 2, p. 5; ECF Nos. 80-82).  There is not a factual dispute here because – even if a breach did occur prior to August 26, 2023 – the question is if Defendant Cogbill knew of such a breach, and she says she did not, and Plaintiff has not placed that in dispute.

Defendant Cogbill testified she was also not aware of the urine incident prior to the inmate fight on August 26, 2023.  (ECF No. 59-2, p. 4).  Cogbill testified that she "was not aware of any

---

[5] The Court is unsure where Defendant Sieger's testimony regarding Plaintiff's allegation against Defendant Cogbill purposefully opening the Pod 5 door stems.  There is no such allegation in Plaintiff's Complaint or Response.  (ECF Nos. 2, 80-82).  Therefore, the Court need not address it here.

substantial risk of a threat to [Plaintiff] prior to this incident, nor was I aware of any substantial risk of this fight happening until it was happening. *Id.* While Plaintiff generally argues that all Defendants knew of a risk to his safety given all the prior Inmate Incident Reports along with the urine incident, he presented no evidence disputing Defendant Cogbill's testimony that she had no knowledge of a substantial risk to Plaintiff. The standard at issue here is not what a reasonable officer should have known, but rather, it is a subjective standard of what Defendant Cogbill actually knew. *See Young,* 508 F.3d at 873 (the defendant must actually know of the substantial risk and fail to reasonable respond to such risk). Even if Defendant Cogbill knew of Plaintiff's prior negative interactions with Pod 5 inmates, the record is undisputed that she did not know that Pod 5 inmates could breach the Pod 5 door and gain access to Plaintiff who was not housed with them at the time of the attack.

Even when considering this summary judgment record in the light most favorable to Plaintiff, there are no issues of material fact as to Defendant Cogbill's lack of knowledge regarding the unreliability of the Pod 5 pod door lock, and for this reason, the Court finds she was not deliberately indifferent to Plaintiff's safety. In other words, Cogbill could not have been deliberately indifferent to Plaintiff's safety if she did not realize he was in danger. Defendant Cogbill is thus entitled to qualified immunity on Plaintiff's failure to protect claim stemming from the August 26, 2023, fight.

### b.    Defendants Maness and Martin

Defendant Maness testified in his Affidavit he had no knowledge the Pod 5 inmates could breach their pod door and access the main hallway. He testified he would not have ignored such knowledge as it creates a security risk at the CCDC. (ECF No. 59-3, p. 3). Defendant Martin also

testified he had no knowledge of the Pod 5 inmates' ability to breach the Pod 5 pod door into the main hallway.  (ECF No. 59-4, p. 3).

Plaintiff argues Defendant Martin and Maness's responses to his Interrogatories contradict their Affidavits and prove their knowledge of the substantial risk posed to Plaintiff and the inmates of the CCDC.  (ECF No. 81, p. 4).  The Court finds the response by Defendants Martin and Maness indicating the steps taken prior to August 26, 2023 to prevent Pod 5 inmates from breaking out appears to indicate a knowledge of issues with the Pod 5 pod door.  The responses specifically state: "until we could get the road department in to look at the *pod* door."  (ECF No. 80, pp. 10, 12) (emphasis added).  However, it is not dispositive but instead creates an issue of fact as to these Defendants' knowledge.   Thus, there is an issue of fact as to whether Defendants Maness and Martin knew of issues with the Pod 5 pod door prior to Plaintiff's attack on August 26, 2023.  Considering, as the Court must for qualified immunity purposes, that this disputed fact is resolved in the Plaintiff's favor and Defendants Martin and Maness knew the Pod 5 door was unreliable, the Court must consider whether these Defendants were deliberately indifferent to a known substantial risk to Plaintiff.

There is no evidence that Defendants Martin and Maness knew of Plaintiff's history with the inmates in Pod 5 – i.e., the urine incident, the threats Plaintiff made against Witcher and Radford, or Plaintiff's threat to kill someone in Pod 5 if he was placed there.  Just as with Defendant Cogbill, Plaintiff's argues that Defendant Maness and Martin should have known; this, however, fails to meet the applicable standard.  *See Young,* 508 F.3d at 873 (the defendant must actually know of the substantial risk and fail to reasonable respond to such risk).  Further, there is no evidence Defendants Martin or Maness knew the Pod 5 inmates planned a breakout or threatened an attack on Plaintiff.

The Court finds, considering the summary judgment record in the light most favorable to Plaintiff, the record does not support a finding that Defendant Martin or Maness were deliberately indifferent to a substantial risk to Plaintiff. Defendants Martin and Maness are entitled to qualified immunity on Plaintiff's failure to protect claim from the August 26, 2023, fight. *See Walton v. Dawson,* 752 F.3d 1109, 1126 (8th Cir. 2014) (in a failure to protect claim, the Eighth Circuit overturned the district court and held the sheriff defendant was entitled to qualified immunity because the knowledge of the jailer with personal involvement could not be presumed on the sheriff without evidence of the sheriff's knowledge and the district court should not have speculated or conjured evidence to rebut the sheriff's testimony that he did not know of the substantial risk posed to the plaintiff).

### c.    Defendant Sieger

Plaintiff's contention that Defendant Sieger knew of the substantial risk has not been disputed by Defendant Sieger. While Defendants argue that no one knew the Pod 5 inmates could breach the pod door and enter the main hallway, all other Defendants testify in their Affidavits that they had no such knowledge. Defendant Sieger, however, does not offer any such testimony – she did not testify that she had no knowledge of the Pod 5 inmates' ability to breach the pod door and did not testify she had no knowledge of any prior incidents regarding Plaintiff and the Pod 5 inmates. (ECF No. 59-5, pp. 3-5). While Sieger did testify that no grievances existed regarding the urine incident on August 14, 2023, she did not testify she lacked knowledge of the incident. (ECF No. 59-5, pp. 3-5). Finally, Defendant Sieger does not address the Ainsworth incident report where it is noted Plaintiff threatened to kill someone if placed in Pod 5 or that Plaintiff's statement was reported to her, or of the Davis incident report in which Plaintiff threatened and spit on Pod 5 inmates. *Id.*

The Court finds Defendant Sieger's lack of testimony regarding her knowledge of these incidents notable given Plaintiff's claims Sieger knew of what Plaintiff describes as a "security breach" in the CCDC but refused to address it.  (ECF No. 2, p. 4-5).  Plaintiff claims that a Pod 5 inmate previously breached the pod door and ran the hallway.  (ECF No. 2, p. 4).  Plaintiff argues that Defendant Sieger did, in fact, know of the risk posed to him by the Pod 5 inmates, and asserts Defendant Sieger covered up and refused to allow him to file grievances on the urine incident. (ECF No. 81, pp. 2-3).  Defendants' Reply is silent as to these allegations.  (ECF No. 84). Accordingly, since Defendant Sieger did not dispute Plaintiff's claim that she knew about the "security breach" or substantial risks posed to him by Pod 5 inmates, or her failure to act regarding these risks, these facts are deemed undisputed as to Defendant Sieger.[6]  Fed. R. Civ. P. 56(e) ((2).

Nevertheless, even these undisputed facts do not save the failure to protect claim from immunity.  As Defendants correctly argue, while Defendant Sieger may have been negligent, she was not deliberately indifferent to the substantial risk to Plaintiff.  *See Schoelch v. Mitchell,* 625 F.3d 1041, 1044-45 (8th Cir. 2010).  It is clearly established in the Eight Circuit that Defendant Sieger had a duty to protect Plaintiff from violence at the hands of his fellow inmates.  *See Perkins*, 161 F.3d at 1129.  It is also clearly established in the Eighth Circuit that surprise attacks by fellow inmates do not rise to the level of a constitutional violation.  *See Vandevender v. Sass*, 970 F.3d 972 (8th Cir. 2020); *see also Schoelch v. Mitchell,* 625 F.3d 1041 (8th Cir. 2010).  The Court finds the undisputed facts here would fall into the category of a surprise attack under the Eighth Circuit precedents of *Vandevender* and *Schoelch.*

---

[6] Since the Court determines for the purposes of this summary judgment opinion that Defendant Sieger knew of the risk to Plaintiff, it need not address Plaintiff's argument that the knowledge of the risk did not have to be personal to Plaintiff.

In *Vandevender v. Sass*, 970 F.3d 972 (8th Cir. 2020), the Court of Appeals for the Eighth Circuit noted that most of their prior failure-to-protect cases arising out of "an inmate-on-inmate assault involved an attacker who was known to be a volatile, dangerous man; or one who previously threatened or fought the victim; or a victim who should have been better protected because of known inmate threats." *Id.* at 976 (citations omitted). In those cases, the Eighth Circuit noted that the "substantial risk of serious harm was obvious, and defendants' liability turned on the subjective issue of deliberate indifference (unless the victim had denied or not disclosed the prior threat or altercation to prison officials)." *Id.* The appellate court also noted it has upheld the grant of qualified immunity when an inmate "is the unfortunate victim of a surprise attack by a fellow inmate." *Id.* "[B]ecause prisons are dangerous places, housing the most aggressive among us and placing violent people in close quarters, ... prison officials are entitled to qualified immunity from claims arising out of a surprise attack by one inmate on another." *Id.* (quoting *Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir. 1998)) (cleaned up).

More recently, in *Schoelch,* the Eighth Circuit analyzed an inmate-on-inmate attack categorizing it as a surprise even though the attacker previously attacked the plaintiff, without injury, approximately two weeks before the injuring attack, and threatened the plaintiff with a shove moments before the injuring attack. 625 F.3d 1041, 1044-45 (8th Cir. 2010). In *Schoelch*, the Court found no deliberate indifference to a substantial risk of serious harm because the two inmates reconciled after the initial attack and cohabitated in the same unit together for approximately two weeks prior to the second attack. *Id.* at 1047. The Eighth Circuit found it notable the plaintiff did not request a transfer or otherwise suggest to anyone he felt threatened by the attacking inmate prior to the second attack. *Id.* Even though the defendant witnessed the attacking inmate shove Schoelch in the lunch line, the Eighth Circuit found it did not rise to a

18

serious level and considered the fact Schoelch continued to sit down and eat his lunch rather than seeking assistance after the shove.  The attack then happened while Schoelch was sitting at the table eating his lunch and was so quick Schoelch could not defend himself nor did the officer have time to intervene before it was done.  *Id.*

Despite the undisputed facts here, Plaintiff does not allege or put forth any evidence to show he was threatened in any way by the inmates in Pod 5 or that the inmates in Pod 5 had planned harm against him.  To the contrary, then record reflects it was Plaintiff making the threats or planning to harm to Pod 5 inmates.  Furthermore, the officer present during the August 26, 2023 attack immediately responded to get the situation under control, took Plaintiff for medical care, and then Defendant Cogbill initiated preventative measures on the Pod 5 door locks.  (ECF No. 59-1; 59-2).  From this record, the Court finds the attack on Plaintiff falls into the category of surprise attack, and Defendant Sieger did not exhibit deliberate indifference to a substantial risk to Plaintiff's safety.  Accordingly, pursuant to *Schoelch* and *Vandevender*, Defendant Sieger is entitled to qualified immunity.

### 2.    Claim One – Conditions of Confinement

Plaintiff also alleges in Claim One that Defendants violated his constitutional rights with the unsafe conditions of confinement to which he was subjected.  (ECF No. 2, p. 4).  The Court interprets Plaintiff's claim as identifying the inoperable locks in Pod 5 as the condition about which he complains.

Defendants respond that Plaintiff has not stated a conditions of confinement claims because Plaintiff describes a specific episode rather than an ongoing condition.  Defendants rely on a District Court case from the Eastern District of Texas for this reasoning.  (ECF No. 60, pp. 11-13) (citing *Cadenhead v. Collin Cty. Det. Facility,* 2023 WL 4981609 (E.D. Tex. June 1, 2023).  In

response, Plaintiff argues he was entitled to conditions that provided reasonable safety in the CCDC.  (ECF No. 81, p. 10).  Plaintiff says Defendants knew of the dangerous condition of the unlocked cell doors but failed to fix the condition until after the attack occurred.  *Id.*  The Court is unconvinced by Defendants' citation of authority and classification of Plaintiff's claim and will address it as stated – a conditions of confinement claim.

In *Stearns v. Inmate Servs. Corp., et al.*, 957 F.3d 902 (8th Cir. 2020), the Eighth Circuit discussed the applicable Fourteenth Amendment analysis for conditions of confinement claims brought by pretrial detainees.  The Eighth Circuit stated:

> In *Bell v. Wolfish*, [441 U.S. 520 (1979)], the Supreme Court articulated the standard governing pretrial detainees' claims related to conditions of confinement.  The Court held that the government may detain defendants pretrial and "may subject [them] to the restrictions and conditions of [a] detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution."  *Id.* at 536-37.  The Court articulated two ways to determine whether conditions rise to the level of punishment.  A plaintiff could show that the conditions were intentionally punitive.  *Id.* at 538.  Alternatively, if there is no expressly demonstrated intent to punish, the plaintiff could also show that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose.  *Id.* at 538-39.  If conditions are found to be arbitrary or excessive, it is permissible to "infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees."  *Id.* at 539.

*Stearns*, 957 F.3d at 907 (alterations in original) (citations to the S. Ct. omitted).  The Due Process Clause is only implicated when a detainee is forced "to endure genuine privations and hardship over an extended period of time."  *Bell*, 441 U.S. at 542.

The Constitution prohibits conditions that are intentionally punitive, are not reasonably related to a legitimate governmental purpose, or are excessive in relation to that purpose.  *Stearns*, 957 F.3d at 907.  The Court must determine, in the light most favorable to Plaintiff, whether his conditions of confinement amounted to punishment.  *Id.* at 908-09.  Conditions of confinement that are related to legitimate government interests do not amount to punishment.  *Bell*, 441 U.S. at

536-39.  In determining whether the conditions of confinement constitute punishment, the Court considers the totality of the circumstances, including the duration of confinement in the harsh conditions.  *Stearns*, 957 F.3d at 909 (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

Defendants have conceded that "Pod 5 inmates being able to get out of the Pod 5 pod door into the main hallway is a safety risk to everyone at Columbia County Detention Center—the inmates, the public, and the officers, including each and every one of the defendants in this lawsuit." (ECF No. 60, p. 9).  The Cort nevertheless finds the Due Process Clause is not implicated here. *Bell*, 441 U.S. at 542.   There is no evidence (or even an allegation) that the unreliable locks were in anyway intended as punitive towards Plaintiff.  Similarly, there is no evidence indicating that the failure to fix the unreliable locks was a decision related to a legitimate governmental purpose.  Plaintiff was subjected to one isolated incident where he sustained injuries to his head during an inmate-on-inmate fight which this Court views as a surprise attack.  Plaintiff's injuries were immediately treated, and the unreliable locks were repaired following the incident.  (ECF No. 59-1, p. 3).  There is nothing in record indicating Plaintiff was subjected to the complained of conditions following this single incident, and even if the unreliable locks condition continued to be a problem for three months, Plaintiff was injured only once during those three months – during the isolated incident on August 26, 2023.    While Defendants' failure to remedy the Pod 5 cell door locks before the incident may have been negligent, it does not give rise to a constitutional violation.  Accordingly, Plaintiff's conditions-of-confinement claim fails as a matter of law and all Defendants are entitled to qualified immunity on this claim.

### 3.    Claim Two

In Claim Two, Plaintiff alleges Defendants Sieger, Martin, and Maness failed to protect him from an inmate in Pod 5 who thew urine on Plaintiff through the trap door on the Pod 5 door.

21

Plaintiff claims this was negligent and claims this occurred because these Defendants ignored the fact that the cell doors and trap door on the Pod 5 door did not remain locked.  (ECF No. 2, p. 6).

Defendants addressed the urine incident within Plaintiff's Claim One.  The Court, however, interprets this claim as an independent one and will address it as such.[7]  The Court need not reach the merits on Plaintiff's Claim Two as Plaintiff has failed to allege any injury from the urine incident.  (ECF No. 2, pp. 5-6). Claims made pursuant to Section 1983 must allege a cognizable injury that is causally traced to the allegedly unconstitutional conduct.  *See Pegan v. Calderon*, 448 F.3d 16, 27 (1st Cir. 2006).  There may be no civil action brought by a prisoner "for mental or emotional injury suffered while in custody without a prior showing of physical injury[.]"  42 U.S.C. § 1997d(d); and *Royal v. Kautzky,* 375 F.3d 720, 723 (8th Cir. 2004) ([W]e read Section 1997e(e) as limiting recovery for mental or emotional injury in all federal actions brought by prisoners.") (emphasis added).  *See also Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008) (Eighth Amendment claims pursuant to Section 1983 require an injury and those injuries must be more than *de minimis*); *Ellis v. Bass*, 982 F.2d 525, 1992 WL 369484, *2 (8th Cir. 1992) (unpublished) (irritation to inmate's skin and eyes caused when another inmate threw a bucket of a bleach and cleanser solution over him was *de minimus* at most); *Chavero-Linares*, 2013 WL 5655559, *8 (N.D. Iowa 2013) (scratch or cut on cheek that Plaintiff received when another inmate threw a chair at her, which required only one pain pill for treatment, was *de minimis* injury).

---

[7] The Court may on its own initiative dismiss claims for failure to state a claim. *See Buckley v. Ray*, 848 F.3d 855, 867 n.9 (8th Cir. 2017); *Smith v. Boyd*, 945 F.2d 1041, 1042-1043 (8th Cir. 1991); *Mildfelt v. Circuit Court*, 827 F.2d 343, 345 (8th Cir. 1987) (per curiam).  Dismissal is appropriate where a "plaintiff cannot possibly prevail and amendment would be futile." *Bucklew v. Lombardi*, 783 F. 3d 1120, 1127 (8th Cir. 2015).

Accordingly, without injury, Plaintiff has failed to state a cognizable Claim Two and all Defendants are entitled to qualified immunity on Claim Two.

### C.    Personal Involvement

Defendants contend a lack of personal involvement by Defendants in Plaintiff's complained of incidents.  Defendants are correct that liability under Section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.  To establish personal liability of the supervisory defendants, [Plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights."  *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (quoting *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006).

Accordingly, even if Defendants Martin, Maness, and Cogbill were not entitled to qualified immunity, Plaintiff's claims would still fail against them as the record does not support any finding that they were personally involved in either of the incidents complained of by Plaintiff.

Moreover, to the extent Plaintiff names Defendants Maness and Martin because they are in supervisor roles over the CCDC, his supervisory claims fail as a matter of law.  As Sheriff and Deputy Sheriff, Defendants Martin and Maness are only liable for their own conduct and cannot be held accountable for the misbehavior of their agents under a theory of *respondeat superior* or supervisor liability.  *Whitson v. Stone County Jail,* 602 F.3d 920, 928 (8th Cir.2010).  However, a supervisor may be found liable under Section 1983 if he is aware of "a substantial risk of serious harm" even if he is not aware that the harm has actually occurred.  *Kahle v. Leonard,* 477 F.3d 544, 552 (8th Cir.2007) (citing *Farmer v. Brennan,* 511 U.S. at 842).  To establish supervisor liability, the plaintiff must show a failure to train or supervise caused his injury.  *Moore v. City of Deslode,* 647 F.3d 841, 849 (8th Cir.2011).  The Eighth Circuit Court of Appeals has stated, "[t]he supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye

23

[to it]." *Boyd v. Knox,* 47 F.3d 966, 968 (8th Cir.1995).  "The question of whether the official knew of the risk is subject to demonstration, like any other question of fact, by inference from circumstantial evidence." *Spruce v. Sargent,* 149 F.3d 783, 786 (8th Cir.1998).  Therefore, if the plaintiff presents evidence of "very obvious and blatant circumstances" showing the supervisor knew of the risk of harm to him, then the fact finder may infer that the supervisor "must have known" of the risk.  *Id.*  Here, there is no evidence to support a theory of supervisor liability against Defendants Maness or Martin.

### D.  Official Capacity Claims

Defendants argue Plaintiff has failed to state any official capacity claims against any Defendants.  (ECF No. 60, pp. 20-21).  Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). In this case, Plaintiff's official capacity claim against Defendants is treated as a claim against Columbia County.  *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Columbia County's liability under Section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). Here, this means Plaintiff must produce summary judgment evidence to show a policy or custom of Columbia County contributed to his claimed constitutional violations – failure to protect and conditions of confinement.

Plaintiff has not challenged any written policy of CCDC.   Therefore, the Court is left to presume Plaintiff intended to challenge a custom of Columbia County.   To establish a claim for "custom" liability, Plaintiff must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the official of that misconduct; and
>
> 3) That Plaintiff was injured by acts pursuant to the government entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas County Medical Dept.*, 725 F.3d 825, 828 (8th Cir. 2013).  "A single deviation from a written, official policy does not prove a conflicting custom." *Id.* at 828-9 (internal quotation and citation omitted).   While Plaintiff's Complaint says he is alleging both individual and official capacity claims against all Defendants, Plaintiff did not allege any facts to support an official capacity claim (or respond to any of Defendants' summary judgment arguments related to official capacity claims).  (ECF No. 80-82).  Plaintiff has presented no evidence of a continuing widespread custom at the CCDC that violated his constitutional rights.   Accordingly, Plaintiff has failed to state cognizable official capacity claims against all Defendants.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment (ECF No. 59) is hereby **GRANTED** and **JUDGMENT** will be entered in favor of Defendants and against Plaintiff.

**IT IS SO ORDERED** this 1st day of October 2024.

_Christy Comstock_
CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE